# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

C.H., a minor,
by RUSSELL HILLIGOSS,
and TAMMY HILLIGOSS,
his natural guardians,

      Plaintiff,

v.                                    Case No. 3:18cv2128/MCR/HTC

THE SCHOOL BOARD OF
OKALOOSA COUNTY, FLORIDA;
MARY BETH JACKSON; STACIE
SMITH; ARDEN FARLEY;
ALAN LAMBERT; JON WILLIAMS;
ROY FRAZIER; JEAN HENNION;
and DOES 1-30,

      Defendants.

_____/

## ORDER

Plaintiff C.H. is an autistic, nonverbal child who allegedly suffered physical and verbal abuse at the hands of his special education teacher, Roy Frazier, and a teacher's aide, Jean Hennion, while he was enrolled at Silver Sands School in Okaloosa County, Florida during the 2014-15 and 2015-16 school years. C.H., through his parents, Russell and Tammy Hilligoss, filed the instant action against the Okaloosa County School Board and seven individual defendants, alleging federal

constitutional and statutory claims, as well as claims under Florida law.[1]  All eight named defendants have separately moved for dismissal of C.H.'s claims.[2]  Having carefully considered the law, the complaint, and the parties' arguments, the Court rules as follows.

## I.    Background

The basic facts, as alleged in the Second Amended Complaint, ECF No. 55, and construed in favor of C.H., are as follows.[3]

### A.    The Parties

Plaintiff C.H. is an autistic, nonverbal child enrolled in the exceptional students education ("ESE") program at Silver Sands School in Fort Walton Beach, Florida.  Silver Sands is a public school in the Okaloosa County School District ("the School District"), governed and overseen by Defendant Okaloosa County School Board ("School Board").  During the time period relevant to this case, Defendant

---

[1] There are three additional, related suits also pending in this Court—two suits are based on Frazier and Hennion's alleged abuse of other students at Silver Sands School, *see N.R. v. Sch. Bd. of Okaloosa Cty., Fla.*, *et al.*, No. 3:18cv2208 and *Van Etten v. Sch. Bd. of Okaloosa Cty., Fla., et al.*, No. 3:19cv0082; one suit is based on allegations that another special education teacher, Marlynn Stillions, abused ESE students at Kenwood Elementary School, *see N.P. v. Sch. Bd. of Okaloosa Cty., Fla.*, *et al.*, No. 3:18cv453.

[2] *See* ECF Nos. 26 (Stacie Smith), 43 (Arden Farley), 46 (Jon Williams), 52 (Jean Hennion), 71 (Mary Beth Jackson), 74 (Roy Frazier), 77 (Okaloosa County School Board), and 82 (Alan Lambert).

[3] At the Rule 12(b)(6) stage, a district court must "accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor."  *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

Mary Beth Jackson was the Superintendent of the School District[4] and Defendant Stacie Smith was the Assistant Superintendent of Human Resources.[5] The School District also employed an investigator, Defendant Arden Farley, who was responsible for, as relevant to this case, investigating allegations of misconduct by instructional personnel and school administrators

For the 2014-15 and 2015-16 school years, C.H. was assigned to the classroom of Defendant Roy Frazier, a special education instructor at Silver Sands, and Defendant Jean Hennion, Frazier's aide. Defendant Alan Lambert served as Silver Sands' principal until his retirement midway through the 2015-16 school year, after which, Defendant Jon Williams became principal.

## B.    The Allegations of Abuse at Silver Sands

C.H. alleges that Frazier and Hennion physically and verbally abused him, as well as other ESE students at Silver Sands, from the beginning of the 2014-15 school year until the end of the 2015-16 school year. Throughout that approximate two-year period, Frazier pushed, slapped, punched, kicked, pinched, flicked, threw shoes

---

[4] As Superintendent, Jackson was the executive officer of the School Board, *see* Fla. Stat. § 1001.33, tasked with implementing and enforcing School District policies set out by the School Board, as well as supervising and disciplining employees.

[5] According to the complaint, Smith's responsibilities as Assistant Superintendent of Human Resources included advising the Superintendent and School Board on matters relating to working conditions, employee discipline, enforcing policies for interviewing and placing employees, overseeing the quality of employee investigations, enforcing personnel policies and maintaining personnel files, and ensuring the welfare and safety of all students in the School District.

at, and withheld food from C.H., often physically injuring him as a result. It is also alleged that Frazier regularly strapped C.H. onto a stationary exercise bike, confined him in a cardboard box, or secluded him in a small, dark room—for hours at a time.[6] The allegations of abuse further include: the use of duct tape on ESE students as restraints; tying a sack over a student's head, causing him to panic and undress himself; swinging students by their arms and legs, then throwing them to the floor, causing at least one student, C.H., to suffer head injuries; striking C.H. with a closed fist causing red marks and bruising; calling students "inappropriate" names, *see* ECF No. 55 at 20; making vulgar and offensive comments to students about their parents; and routinely locking students in a hot transport van. The alleged abuse occurred openly in classrooms, in school hallways, and on school field trips.

According to the complaint, Frazier's conduct did not go unreported to school administration officials.[7] Numerous unnamed Silver Sands employees who "witnessed" Frazier physically and verbally abusing ESE students reported their observations directly to Principal Lambert "on multiple occasions during the fall

---

[6] This alleged conduct, too, sometimes resulted in physical injuries to students. For example, one ESE student was allegedly injured when the stationary bike Frazier had strapped him to (as a punishment) tipped over and fell on top of him. *See* ECF No. 55 at 16.

[7] All of the individual defendants in this case were mandatory reporters under Florida law, which requires that any "[s]chool teacher or other school official or personnel" who "knows, or has reasonable cause to suspect, that a child is [being] abused . . . *shall* report such knowledge and suspicion to" the Central Abuse Hotline for the Florida Department of Children and Families. *See* Fla. Stat. § 39.201(1), (2) (emphasis added). "[K]nowingly and willfully fail[ing] to comply" with the mandatory reporter statute, or "knowingly and willfully prevent[ing] another person from doing so," is a third-degree felony. *See* Fla. Stat. § 39.205(1).

semester of the 2015-2016 school year." *See id*. at 28. Many times, Principal Lambert reassured the reporting employee that he would talk to Frazier and "tak[e] care of" the matter. *See id*. However, he never spoke with Frazier and never acted to stop the abuse. Instead, in many instances, he retaliated against the reporting employees by "separating them from their assigned students, moving them to different classrooms, and changing one aide's assigned *lunch* hour to 9:15 a.m." *See id*. at 32-33. In another instance, Principal Lambert told a teacher's aide that he "had only one year left until retirement" and "not to ruin that time" by reporting physical abuse and "forcing him to deal with the consequences of such a report." *See id*. at 28-29. Principal Lambert did, in fact, retire "midway through the 2015-2016 school year," without ever having fulfilled his state-mandated obligation to report Frazier's alleged abuse to the Florida Department of Children and Families ("DCF") or otherwise taken any action to protect Frazier's students. *See id*. at 9.

In January 2016, Principal Williams joined Silver Sands. At the time, Frazier was still openly abusing ESE students in classrooms, school hallways, and on school field trips. On February 16 and 18, 2016, teacher's aides in Frazier's classroom sent "written notification" of Frazier's ongoing abuse to four School District officials—Principal Williams, Investigator Farley, HR Assistant Superintendent Smith, and Superintendent Jackson—in which they described a litany of separate incidents of

abusive conduct.[8]  *See id*. at 29-30.  At this point, Smith emailed Frazier to advise him of "the seriousness of the allegations against" him and the "need for [his] students to be protected from him."  *See id*. at 31.  Thereafter, Investigator Farley investigated and substantiated the physical abuse allegations, then detailed his findings in an "[i]nvestigative [s]ummary" that was sent to Principal Williams, HR Assistant Superintendent Smith, Superintendent Jackson, and Jeffrey McInnis, an attorney for the school district.[9]  *See id*. at 30-31.  In the summary, Investigator Farley recommended that Frazier be disciplined and "evaluated to assess whether an environment of disabled students is where he should work."  *See id*.  As with Principal Lambert, none of these school officials made a mandatory report of Frazier's abuse to DCF.

Approximately 10 days later, on March 16, 2016, HR Assistant Superintendent Smith sent a letter to Superintendent Jackson recommending that Frazier receive a three-day suspension for "not following student [behavioral intervention plans]" and "not documenting accurate travel locations when he took

---

[8] In particular, these school officials were notified that Frazier "pinched, hit, kicked and inappropriately touched students; threw shoes at students; swung a child with muscular dystrophy and dropped him on the ground; brought a BB gun to school; and would lie about taking nonverbal, disabled ESE students on field trips when in fact he was taking said students to garage sales and would leave the students locked in the school transport van while he shopped for items to sell for his own monetary benefit."  *See* ECF No. 55 at 29-30.

[9] According to the complaint, Investigator Farley submitted his investigative summary to the School District's "Human Resource division" on February 24, 2016.  *See id*. at 30.  The investigative summary was allegedly sent to the defendants on March 5, 2016.  *See id*. at 31.

students on field trips." *See id*. at 31. The next day, Superintendent Jackson sent two letters—one addressed to Frazier, the other to the School Board—also recommending a three-day suspension for the same reasons. None of the letters discussed, or even mentioned, the substantiated reports that Frazier was physically abusing ESE students. Frazier was ultimately suspended for three days; however, he was not required to serve the suspension "immediately or even on consecutive days." *See id*. Instead, he was permitted to choose three dates, over the course of a month, that were convenient for him.[10]

Throughout this period—and, indeed, through the end of the 2015-2016 school year—school officials left Frazier in the same ESE classroom, where he continued physically abusing C.H. and other ESE students. And, Silver Sands employees continued reporting the abuse to school officials. In April 2016, for example, a teacher's aide voiced her concerns in a phone call with HR Assistant Superintendent Smith and Superintendent Jackson. These two officials "disregarded" the aide's report. *See id*. at 32. Other aides were instructed by the "administration to only reply 'today was a good day,'" if asked by a student's parents how the school day went. *See id*. at 33. Finally, it is alleged that unnamed "administration" officials intentionally made a false report to DCF in order to

---

[10] Farley opted to serve his suspension on the following dates: Friday, April 29, 2016; Monday, May 16, 2016; and Tuesday, May 31, 2016.

conceal Frazier's abuse.  More specifically, on one occasion, Frazier allegedly punched C.H. so hard in the chest that it echoed across the hallway and caused red marks and bruising.  Administration officials allegedly described the incident to DCF, but purposely identified a different child as the victim so that DCF would not know to investigate the actual victim, C.H.  Other than this alleged false report to DCF, none of the defendants in this case reported Frazier's conduct to appropriate authorities, despite their state-mandated reporting obligation.

### C.   The Allegations of Abuse at Kenwood Elementary School

"Shortly after" receiving notice of Frazier's abusive conduct at Silver Sands, the School Board, Superintendent Jackson, HR Assistant Superintendent Smith, and Investigator Farley "were contacted regarding" another ESE instructor, Marlynn Stillions, who allegedly was physically abusing ESE students at another school in the School District, Kenwood Elementary School.  *See* ECF No. 55 at 34.  Stillions had reportedly kicked and shoved ESE students; pinched their faces and bodies causing red marks and bruising; forced vinegar into students' mouths and sprayed it in their faces; slammed a student's head into the wall; purposefully tripped a student, carried him forcefully into the cafeteria by the waistband and shirt, and then threw him on the floor; and confined students in a basket, placed a bean bag "on or near" the children's genitals, and then stepped on it, causing pain.  *See* ECF No. 55 at 26.

On April 26, 2016, Kenwood's then-principal, Angelyn Vaughan, sent an email to the School District's Human Resources Department describing "alleged Code of Ethics violations made by several [School District] employees who had seen Stillions acting abusively to" ESE students. *See id*. at 34. The next day, Investigator Farley began investigating Stillions' alleged misconduct and, in time, he interviewed 20 employees at Kenwood, many of whom recounted Stillions' history of physically and verbally abusing ESE students over an approximate two-year period.[11] During the investigation, Investigator Farley and unnamed School District administrators had Kenwood employees agree not to discuss the investigation or their knowledge of Stillions' abuse, allegedly in an effort to further conceal the abuse. On June 17, 2016, Investigator Farley presented an "Investigative Summary Report" to HR Assistant Superintendent Smith and Principal Joan Pickard, who took over as Kenwood's principal when Angelyn Vaughan left the position.[12] The report detailed Farley's investigative findings, which included multiple confirmed instances of child abuse by Stillions, and recommended that Stillions be disciplined.

---

[11] According to C.H., Superintendent Jackson, HR Assistant Superintendent Smith, and several other school administration officials "were aware of" Farley's investigation. *See* ECF No. 55 at 35.

[12] Neither Pickard nor Vaughan are named as a defendant in this case; however, they are both named defendants in the related case involving a Kenwood ESE student, N.P., No. 3:18cv453/MCR/HTC.

One month later, on July 18, 2016, HR Assistant Superintendent Smith sent an email to Superintendent Jackson, Investigator Farley, and Principal Pickard acknowledging the School District's failure "to emphasize and/or enforce the mandatory requirement to report child abuse" and requesting that, in light of the "Stillions events," child abuse/neglect training be provided to employees during the 2016-17 school year. *See* ECF No. 55 at 36-37. The next day, Pickard sent a reply email to the same officials expressing that the employees' failure to report was a result of their not knowing "what/when" to report and fearing retaliation by a teacher's union if they reported abuse. *See id*. On August 1, 2016, HR Assistant Superintendent Smith dismissed the case against Stillions as untimely and determined that Farley's investigative report would not be included in Stillions's personnel records. Thereafter, the School Board, Superintendent Jackson, HR Assistant Superintendent Smith, Investigator Farley and Melody Sommer, the ESE program director for the School District, approved Stillions for a transfer to Silver Sands for the 2016-17 school year, where Stillions was placed in another ESE classroom with even more severely disabled students.

Throughout the relevant time period in this case, none of the School District officials reported Stillions's abuse to the students' parents or to appropriate authorities, despite their state-mandated reporting obligation. C.H. alleges that this

was all part of a "long-standing custom, policy, and/or practice" within the School District of deliberate indifference and concealment of the abuse of ESE students.

### D. Procedural Posture

C.H. has alleged claims against actors at all levels of the School District; thus, his theories of liability differ based on each defendant's alleged actions, responsibilities, and knowledge of the alleged abuse. Briefly stated, C.H. alleges that: (1) two defendants—Frazier and Hennion—physically and verbally abused him and other ESE students; and (2) six defendants—Principal Lambert, Principal Williams, Investigator Farley, HR Assistant Superintendent Smith, Superintendent Jackson, and the School Board—were aware of Frazier and Hennion's abuse but failed to intervene and take remedial action, which allowed the abuse to continue. In the complaint, C.H. alleges constitutional claims of unlawful restraint, substantive due process, equal protection, and conspiracy to interfere with his civil rights on theories of individual and supervisory liability (Counts One through Ten). He also asserts federal law claims against the School Board under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* (Counts Eleven and Twelve), as well as state law battery and negligence claims against Frazier and Hennion (Counts Sixteen and Seventeen), and state law claims against the School Board for negligent hiring, training, retention, and supervision, and *respondeat superior* (Counts Fourteen and

Fifteen). In response, all eight defendants have moved for dismissal of C.H.'s claims under Federal Rule of Civil Procedure 12(b)(6).[13]

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. Federal pleading rules require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). While detailed allegations are not required, there must be "more than labels and legal conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the factual allegations in a complaint must

---

[13] Several counts in the complaint incorporate all 137 paragraphs of the factual allegations and include multiple defendants, without separately indicating which factual paragraphs substantiate which claims against which defendant. In response, several of the defendants moved to dismiss the 98-page complaint as a shotgun pleading but also responded substantively to the claims against them. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing types of "shotgun pleadings" as including those that do not separate each cause of action or claim for relief into separate counts and those that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions). The Court agrees that the complaint is an example of poor pleading practice and C.H. should have been more specific in identifying what acts or omissions each defendant is responsible for in each count. In fact, attempting to decipher the specific allegations against each defendant has unduly prolonged this Court's review of the pending motions to dismiss. Nonetheless, the Court will review the substance of the motions and not dismiss for pleading inadequacies because there was at least some attempt in the complaint to group related defendants and several factual paragraphs specify the acts of the defendants by name. Each count does not incorporate prior counts and the defendants were able to respond to the allegations. Although this has been a cumbersome process, the Court has been able to review the claims substantively and finds that in this instance, neither dismissal as a shotgun pleading nor further delay of discovery for re-pleading is justified. *See id.* (finding dismissal for shotgun pleading appropriate only "where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief").

state a claim that is "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In deciding whether a plaintiff has set forth a plausible claim, the court must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 889, 94 (2007), and draw all reasonable inferences in the plaintiff's favor, *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). The plausibility determination presents a "context-specific task that requires [a] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Dismissal is appropriate only where, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

## III. Discussion

The Court begins with C.H.'s claims against the individual defendants only, including the issues of whether any of the defendants is entitled to qualified immunity for the federal claims and whether Frazier and Hennion are entitled to

official immunity for the state law claims. The Court then addresses C.H.'s federal and state law claims against the School Board, followed by the conspiracy claims.

## A.     Individual Defendants, Constitutional Claims

Five of the counts in the complaint—Counts Five, Six, Seven, Nine, and Ten—are constitutional claims brought against individual defendants pursuant to 42 U.S.C. § 1983.[14]  To state a claim under § 1983, a plaintiff must allege the deprivation of a constitutional or federal statutory right by someone acting under of state law. *Doe v. Sch. Bd. of Broward Cty., Fla*., 604 F.3d 1248, 1265 (11th Cir. 2010).  In this case, it is undisputed that all of the individual defendants were acting under color of state law in regard to the conduct alleged by C.H.:  they acted in their capacities as a teacher, teacher's aide, principal, investigator, assistant superintendent, or superintendent for a public school district.  The only dispute, for purposes of the sufficiency of the § 1983 individual capacity claims at least, is whether C.H. has adequately alleged that these defendants' conduct deprived him of a constitutional or federal statutory right.

---

[14] Counts Five through Seven allege claims for unreasonable seizure, excessive force, and equal protection violations, respectively, against Superintendent Jackson, HR Assistant Superintendent Smith, Investigator Farley, Principal Lambert, and Principal Williams.  Counts Nine and Ten allege claims for unreasonable seizure and excessive force, respectively, against Frazier alone.

### 1. Roy Frazier

C.H. alleges that Frazier's abusive conduct constituted an unreasonable seizure, in violation of the Fourth Amendment (Count Nine), and constitutionally excessive force, in violation of the Due Process Clause of the Fourteenth Amendment (Count Ten). In response, Frazier argues that C.H. has failed to state a § 1983 claim against him and, in any event, he is entitled to qualified immunity.

### a. Unreasonable Seizure, Fourth Amendment

Regarding the Fourth Amendment claim, the Court finds that the allegations in this case do not support a cause of action under § 1983. In the Eleventh Circuit, claims involving physical abuse in a school setting are analyzed exclusively under the substantive due process component of the Fourteenth Amendment, which encompasses a fundamental right to be free from excessive corporal punishment at the hands of public school officials. *See, e.g., T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 612 (11th Cir. 2010); *Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir. 2000). C.H. has not cited, and the Court has not found, any Eleventh Circuit authority applying the Fourth Amendment to claims of excessive corporal punishment by school officials, even where the allegedly abusive conduct included improper physical restraint of a student. *See id.* Thus, the Court concludes that the Fourteenth Amendment, rather than the Fourth

Amendment, is the appropriate vehicle for assessing the constitutionality of Frazier's conduct.[15]

### b.    Substantive Due Process, Fourteenth Amendment

Regarding the Fourteenth Amendment claim, the Court finds that C.H. has adequately alleged a cause of action under § 1983.  School officials violate the substantive component of the Due Process clause when their use of allegedly excessive corporal punishment rises to the level of "arbitrary, egregious, and conscience-shocking behavior" that is "unjustifiable by any government interest." *See Neal*, 229 F.3d at 1074-75; *see also Ingraham v. Wright*, 430 U.S. 651 (1977). To state a substantive due process claim in this context, a student must allege facts demonstrating that:  "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Neal*, 229 F.3d at 1075.  The first element has an objective and a subjective component, both of which must be met before the school official may be subject to liability.  *See id*. at 1075 n.3.  The objective component requires a court to consider the "totality of the circumstances" when deciding "whether the amount of force used is obviously excessive," including: (1) the need to administer corporal punishment to the student; (2) the

---

[15] Indeed, C.H.'s theory of "unreasonable seizure" is factually and legally inseparable from his substantive due process claim.

relationship between the need for punishment and the amount of punishment administered; (3) the extent of any injury inflicted; and (4) whether or not the student is disabled. *See id.*; *Wilson*, 610 F.3d at 600; *see also Hatfield v. O'Neill*, 534 F. App'x 838, 845 (11th Cir. 2013) (noting that the disability factor is "particularly significant" when the plaintiff's disability is "profound"). The subjective component focuses on whether the school official "subjectively intended to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." *See Neal*, 229 F.3d at 1075 n.3.

Applying these factors, the Court finds that C.H. has alleged facts sufficient to satisfy the objective component of a substantive due process claim for excessive corporal punishment against Frazier. To begin with, the complaint describes a multi-year pattern of physical abuse by Frazier, ranging from pinching and flicking to punching and kicking, from swinging C.H. by his arms and legs to throwing C.H., head first, to the ground. Frazier also allegedly withheld food from C.H. and, on numerous occasions, for hours at a time, strapped C.H. to a stationary bike, confined him in a cardboard box, secluded him in a dark room, or locked him in a hot transport van. This amount of force, if true, is objectively "obviously excessive" under the totality of the circumstances alleged here.

Turning to the first and second factors, the factual allegations, if true, establish that there was little or no need for Frazier to use physical force against C.H. Frazier

was not acting in self-defense, or with any identifiable pedagogical or disciplinary purpose, or to protect C.H. from harming himself or others. *See Wilson*, 610 F.3d at 600; *see also Hatfield*, 534 F. App'x at 845-46 (holding the need for a teacher to strike a developmentally disabled child in the head was nonexistent where the teacher was not acting in self-defense, or with a disciplinary purpose, or in an attempt to protect the child). It is certainly plausible that C.H., like any student, sometimes posed challenges in the classroom. However, given C.H.'s disabilities, it is inconceivable that those challenges would ever require the type and amount of physical force administered by Frazier here. *Compare Wilson*, 610 F.3d at 588 (restraining autistic student by pinning arms behind his back was not excessive given student's refusal to leave classroom, use of vulgarities, and threats to have teacher arrested) with *M.S. ex rel. Soltys v. Seminole Cty. Sch. Bd.*, 636 F. Supp. 2d 1317, 1324 (M.D. Fla. 2009) (finding it disproportionate to slam an autistic student on a desk for failing to pay attention or control bodily functions because the conduct being addressed "was that of the uncontrollable behavior of a special needs student") and *J.V. v. Seminole Cty. Sch. Bd.*, No. 6:04cv1889, 2007 WL 7261470, at *8 (M.D. Fla. Mar. 21, 2007) (explaining that a teacher body slamming an autistic student on desk for screaming, arm flapping, and self-stimulation was a disproportionate response because the conduct being addressed was normal behavior for autistic children); *see also B.M. ex rel. M.F. v. Thompson*, No. 3:13cv13, 2013 WL 4547344,

at *5 (M.D. Fla. Aug. 27, 2013) (finding allegations that a teacher lodged an unprovoked attack by throwing a pencil at a severely disabled student "when there was no need for any use of force at all," considered with the surrounding circumstances, sufficient to state a plausible claim for relief). The Court thus finds that the first and second factors have been adequately alleged in this case.

The third factor—the extent of C.H.'s injury—has also been adequately alleged. The complaint alleges that as a result of Frazier's force, C.H. experienced head injury, red marks and bruising, physical pain, and hunger. It is also alleged that C.H. now suffers from post-traumatic stress disorder. In this context, which involves a profoundly disabled and vulnerable child victim, C.H.'s alleged physical and psychological injuries are sufficiently severe to state a plausible substantive due process claim. *See, e.g.*, *Kirkland ex rel. Jones v. Greene Cty. Bd. of Education*, 347 F.3d 903 (11th Cir. 2003) (school official struck unarmed and unthreatening student with a metal cane with enough force to cause a large knot and migraine headaches); *Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1135 (N.D. Ga. 2016) (allegations that autistic child suffered scrapes, bruises, and post-traumatic stress disorder sufficient to state claim for excessive corporal punishment); *B.M. ex rel. M.F. v. Thompson*, No. 3:13cv13, 2013 WL 4547344 (M.D. Fla. Aug. 27, 2013) (allegations that disabled child's post-traumatic disorder was caused by being hit with a pencil were severe enough to "state a plausible claim for relief in that they

raise a reasonable expectation that discovery will reveal evidence sufficient to establish a violation of [the student's] constitutional rights").

On balance, the totality of the alleged circumstances, taken as true and viewed in the light most favorable to C.H., state a plausible claim that Frazier used an "obviously excessive" amount of physical force against C.H. The Court thus finds that the allegations satisfy the objective component of a substantive due process claim for excessive corporal punishment.

The Court also finds that C.H. has plausibly stated a claim that Frazier "subjectively intend[ed] to use [an] obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." *See Neal*, 229 F.3d at 1075 n.3. This subjective component of an excessive corporal punishment claim may be satisfied where a school official's alleged conduct creates an inference of malice. Malice may be inferred from the existence of a pattern of abusive conduct, *see Soltys*, 636 F. Supp. 2d at 1325, the official's use of derogatory language during the alleged abuse, *see Hatfield*, 534 F. App'x at 847, and abusive conduct that presented a "foreseeable risk of serious bodily injury," *see Kirkland*, 347 F.3d at 904.

In this case, the requisite subjective intent and malice are readily apparent from C.H.'s allegations. According to the complaint, Frazier threw things at ESE students, including C.H., because he found it "funny," and he pinched them to

purposely inflict pain and redirect their attention. *See* ECF No. 55 at 16. Frazier also allegedly verbally antagonized C.H., and other ESE students, as part of his multi-year pattern of abuse. Finally, much of Frazier's alleged physically abusive conduct presented a risk of serious injury to the particularly vulnerable children at whom it was directed. These allegations, together with the lack of legitimate governmental interest in subjecting C.H. to any physical force, plausibly support an inference that Frazier's conduct was intentional and malicious.

In sum, the Court finds C.H.'s factual allegations sufficient to plausibly establish that Frazier intentionally used amounts of force against C.H. that were obviously excessive under the circumstances and that Frazier's conduct presented a foreseeable risk of serious bodily injury. Accepting these allegations as true, which the Court must do at this stage, *Erickson*, 551 U.S. at 94, the Court finds Frazier's conduct to be the "kind of egregious official abuse of force that would violate substantive due process protections," *see Neal*, 229 F.3d at 1076.

## 2. Other Individual Defendants

C.H. also asserts constitutional claims against five additional defendants in their individual capacities: Principal Lambert, Principal Williams, Investigator Farley, HR Assistant Superintendent Smith, and Superintendent Jackson.[16] C.H.

---

[16] Counts Five through Seven assert substantive claims under 42 U.S.C. § 1983: (1) unreasonable seizure; (2) substantive due process; and (3) equal protection. Count Eight asserts conspiracy claims under §§ 1983 and 1985(3).

does not claim that these five defendants personally participated in any of Frazier's alleged physically abusive conduct. Instead, C.H. alleges that each defendant is personally liable, under a theory of supervisory liability, because he or she failed to act in response to reports of Frazier's abuse and, thereby, exhibited reckless disregard for and deliberate indifference to C.H.'s rights under the Fourth (unreasonable seizure) and Fourteenth Amendments (due process and equal protection).

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). However, they may be liable for their own misconduct. *Iqbal*, 556 U.S. at 676-77. Actionable misconduct occurs where the supervisor "personally participate[d] in the alleged constitutional violation" or where "there is a causal connection between actions of the supervising official and the alleged constitutional violation." *See id*. The causal connection can be established in several ways. First, a plaintiff can show that a "history of widespread abuse"—one that was "obvious, flagrant, rampant and of continued duration"—put a "responsible supervisor" on notice of the need to correct the alleged constitutional deprivations, but he failed to do so. *Broward Cty.*, 604 F.3d at 1266. Importantly, "[t]here is no bright line identifying when misconduct transforms from a couple of isolated instances into a pattern of abuse." *Williams*,

181 F. Supp. 3d at 1128 (citing *Broward Cty.*, 604 F.3d at 1266). "One or two incidents of abuse is generally insufficient to indicate a pattern." *Id.*; *see also Broward Cty.*, 604 F.3d at 1266. However, allegations of anything more than that are generally found sufficient at the motion to dismiss stage, even where the abusive acts were committed by a single employee. *See Williams*, 181 F. Supp. 3d at 1122; *see also Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006) (13 complaints of prisoner abuse over 1.5 year period); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456-57 (5th Cir. 1994) (five prior incidents of sexually inappropriate behavior by teacher); *Shaw v. Stroud*, 13 F.3d 791, 800 (4th Cir. 1994) (finding knowledge of at least three prior incidents of excessive force was sufficient to be widespread); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 728-29 (3d Cir. 1989) (five complaints of abuse by two teachers over 4 years found sufficient); *J.V.*, 2005 WL 1243756, at *3 (repeated acts of abuse by a single teacher). Alternatively, the plaintiff can establish causation with facts supporting "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating*, 598 F.3d at 762. Finally, the causal connection can be established where the supervisor's "improper custom or policy results in deliberate indifference to constitutional rights." *See Broward Cty.*, 604 F.3d at 1266.

### a.   Unreasonable Seizure, Fourth Amendment

The Court begins with the claim that the supervisory defendants' conduct "demonstrated recklessness and/or deliberate indifference to" C.H.'s right to be free from unreasonable seizure, in violation of the Fourth Amendment. *See* ECF No. 55 at 61. Because the Court has already determined that no Fourth Amendment violation occurred, this claim provides no basis for relief and will be dismissed. *See Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) (explaining that a constitutional violation by a subordinate is a necessary predicate to supervisory liability); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (stating that a claim for supervisory liability fails where there is no underlying constitutional violation by a subordinate).

### b.   Substantive Due Process, Fourteenth Amendment

Regarding the Fourteenth Amendment claim, the Court finds that C.H. has failed to allege a supervisory liability claim under § 1983 against Investigator Farley, but he has adequately stated a claim against Principal Lambert, Principal Williams, Assistant Superintendent Smith, and Superintendent Jackson.

### i.   Investigator Farley

C.H. has failed to state a claim for supervisory liability against Investigator Farley because the factual allegations in the complaint do not plausibly establish—directly or inferentially—that Farley was a supervisory official. Although

Investigator Farley is alleged to have had responsibility for "establishing, implementing and/or enforcing policies and procedures regarding the training and/or supervision of employees," *see* ECF No. 55 at 9, and he recommended disciplinary measures for Frazier in his report, there is no allegation that Farley was a part of the School District chain of command or a "responsible supervisor" with respect to Frazier or Hennion. Indeed, the facts related to Farley plausibly show only that he was tasked with investigating the complaints, and then passed his reports and recommendations to his supervisors, who essentially ignored his substantiated findings of physical abuse and recast Frazier's misconduct in a more favorable light. There is no factual allegation showing that Farley had authority to remove Frazier or C.H. from the classroom, or otherwise effectuate that result. In short, C.H. has offered no factual or legal support for the proposition that an investigator for a school district, like Farley, can be deemed a supervisor of the school district's employees.[17] Consequently, dismissal of the supervisory liability claim against Investigator Farley is appropriate.

---

[17] The fact that Investigator Farley was a mandatory reporter does not make him a supervisor for purposes of § 1983. As already discussed, *see* supra n.7, in Florida, *all* school teachers and "other school official[s] or personnel" are mandatory reporters. *See* Fla. Stat. § 39.201(1)(d)(1).

### ii. Principal Lambert

The complaint alleges facts demonstrating that Principal Lambert was aware of Frazier's history of physically abusing nonverbal, developmentally disabled children and failed to stop it.[18] Frazier's alleged abuse was blatant—it occurred in classrooms, in school hallways, and on school field trips—and continued for at least two years. Silver Sands employees allegedly reported Frazier's conduct directly to Principal Lambert numerous times throughout the fall semester of the 2015-16 school year, yet Principal Lambert ignored the reports and, in at least one instance, actively suppressed them. Principal Lambert retired in December 2016 without ever having made a mandatory report to the DCF Child Abuse Hotline or otherwise taken action to protect Frazier's students. These allegations are more than sufficient to state a claim for a "history of widespread abuse" that a supervisor, Principal Lambert, failed to stop.

The complaint also adequately alleges that Principal Lambert employed a custom of deliberate indifference to Frazier's conduct. "[A] principal who fails to appropriately respond to repeated reports of a subordinate's abuse of students may, depending on the facts of the case, be said to have acted with deliberate indifference." *Williams*, 181 F. Supp. 3d at 1128 (citing *Doe v. Bd. of Educ. of*

---

[18] The Court notes that Principal Lambert did not challenge the Fourteenth Amendment claim for failure to state a claim.

*Consol. Sch. Dist. 230 Cook Cty., Ill*, 18 F. Supp. 2d 954, 958 (N.D. Ill. 1998) (denying summary judgment in a school abuse case for principal/assistant superintendent, band director, and a handful of other defendants because there was sufficient evidence suggesting some defendants may have "turned a blind eye" to teacher's abuse of students)); *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (stating that a jury could find a principal's "doing nothing" in response to reports of sexual harassment amounted to deliberate indifference that subjected student to further abuse); *Taylor*, 15 F.3d at 457 (denying summary judgment where principal "demonstrated deliberate indifference to [teacher's] offensive acts by failing to take action that was obviously necessary to prevent or stop the abuse").

Here, C.H. alleges that Principal Lambert engaged in a pattern of dismissiveness and intimidation towards the numerous Silver Sands employees who reported Frazier's abusive conduct.[19] These alleged facts, if true, plausibly establish that Principal Lambert knew Frazier was harming disabled students for at least eighteen months and did nothing about it—or worse, took actions that may have condoned or acquiesced in it. Accordingly, the Court finds C.H. has stated a substantive due process claim for supervisory liability against Principal Lambert.

---

[19] *See, e.g.,* ECF No. 55 at 28 (Principal Lambert frequently "reassured the reporting employees that he would talk with Frazier"; however, instead, he "failed to intervene, report the conduct, and/or notify the students' parents"); 32-33 (Principal Lambert "retaliated against [teachers'] aides for reporting [Frazier's] unconstitutional conduct").

### iii.    Principal Williams

The complaint also plausibly alleges facts sufficient to support an inference that Principal Williams was aware of Frazier's history of physically abusing nonverbal, developmentally disabled children and failed to stop it.    Principal Williams did not become Silver Sands' principal until January 2016, by which time the alleged abuse had been ongoing for at least 1.5 years.    There are no allegations that Principal Williams was on the faculty at Silver Sands—or anywhere else in the School District—before assuming the principal position.    Thus, even viewed in the light most favorable to C.H., the complaint does not support a reasonable inference that Principal Williams would have had an opportunity to learn of Frazier's abusive conduct before January 2016, at the earliest.

However, C.H.'s factual allegations plausibly show that after joining Silver Sands in January 2016, Principal Williams received notice of Frazier's history of physically abusing students.    Again, it is alleged that the abuse was "obvious, flagrant, and rampant" in that it occurred openly in classrooms, in school hallways, and on school field trips.    Principal Williams also allegedly received "written notification" of the "ongoing abuses" from teachers' aides in Frazier's classroom in early February 2016, which detailed a litany of separate incidents of physical abuse. *See* ECF No. 55 at 29.    The abuse allegations were substantiated by an internal investigation shortly thereafter, yet Principal Williams and other School District

officials left Frazier in the "same [ESE] classroom," where he continued the same physical abuse of students, through the end of the 2015-16 school year. *See id.* at 32-33. Teachers' aides allegedly continued reporting the ongoing abuse to Principal Williams and he, like Principal Lambert before him, allegedly did nothing about it, retaliating against the aides instead. Throughout the relevant time period in this case, Principal Williams never made a mandatory report to the DCF Child Abuse Hotline. Taken together, these allegations plausibly support C.H.'s claim that Principal Williams was on notice of a need to correct Frazier's history of physically abusing ESE, but failed to do so.

### iv. HR Assistant Superintendent Smith and Superintendent Jackson

The same is true for HR Assistant Superintendent Smith and Superintendent Jackson.[20] According to the complaint, these two defendants received written notice

---

[20] HR Assistant Superintendent Smith also argues that the complaint does not plausibly show that she was Frazier's supervisor for purposes of liability under § 1983. In Smith's view, the pleading conflates into one category individuals with various roles under the hierarchy created for schools in the Florida Constitution and the Florida statutes, which gives the Superintendent and the Principal supervisory authority over personnel. *See* Fla. Const. Art. IX §§ 4-5 (establishing school boards and superintendents); *see also* Fla. Stat. §§ 1001.32 (school board, superintendent, and principal as supervisors); 1001.33 (superintendent as executive officer of school board); 1001.41 (general powers of school board); 1001.49 (superintendent has authority for general oversight and to advise school board); 1001.54 (principal has authority over school district personnel); 1012.27-.28 (stating duties of superintendent and principal over personnel). On consideration, the Court is not prepared to find, as a matter of law or fact, that Smith was a supervisor. There is no express allegation that she was Frazier's supervisor and no allegation that she had oversight over Frazier's classroom conduct. Nonetheless, drawing all inferences C.H.'s favor, given Smith's title of Assistant Superintendent and her role in advising the Superintendent with regard to disciplinary matters, together with the allegation that she dismissed the disciplinary case against Stillions, the ESE instructor at Kenwood, and participated in the decision to transfer

of Frazier's lengthy history of physical abuse against ESE students at the same time as Principal Williams—on February 16 and 18, 2016. At this point, Smith allegedly advised Frazier of the "seriousness of the allegations against" him and the "need for [his] students to be protected from him." *See id*. at 31. Thereafter, the physical abuse allegations were substantiated by an internal investigation submitted to HR Assistant Superintendent Smith and Superintendent Jackson, among others. Nevertheless, and inexplicably, Frazier was allegedly left in the "same [ESE] classroom," where he continued the same physically abusive conduct, through the end of the 2015-16 school year. *See id*. at 32-33. During this period, Silver Sands employees allegedly continued making reports directly to these two supervisory defendants that Frazier was still harming ESE students.[21] It is alleged that neither of these defendants ever acted to eliminate the danger that Frazier posed to ESE students or reported his abuse to the DCF Child Abuse Hotline, despite their state-mandated reporting obligation. Taken together, these factual allegations plausibly support an inference that HR Assistant Superintendent Smith and Superintendent Jackson were aware of many more than "one or two incidents" of child abuse by

---

Stillions to Silver Sands, the Court finds that it is plausible on these allegations to infer that Smith had a supervisory role. Whether that inference will be justified on a fully developed record is a question for another day. This issue will need to be supported by fact and adequately briefed in order to survive summary judgment.

[21] For example, a teacher's aide in Frazier's classroom allegedly communicated her concerns about Frazier in a telephone call with Superintendent Jackson and HR Assistant Superintendent Smith in April 2016.

Frazier and, thus, of a need to stop his behavior, but failed to do so. *See Williams*, 181 F. Supp. 3d at 1122 (observing that "anything more than" one or two incidents of abuse is "generally sufficient" to "indicate a pattern" at the motion to dismiss stage). This plausibly establishes a causal connection between Frazier's alleged constitutional violations and the two supervisory defendants' actions and inactions.

At this point, the Court finds it important to emphasize that the above determinations do not amount to a final conclusion that the alleged conduct of any of the supervisory defendants—Principal Lambert, Principal Williams, HR Assistant Superintendent Smith, or Superintendent Jackson—did, as a matter of fact or law, violate C.H.'s substantive due process rights. Indeed, there are many "good faith but ineffective responses that might satisfy a school official's [constitutional] obligation[s]" with respect to allegations that a teacher is physically abusing students. *See Taylor*, 15 F.3d at 456 n.12. Here, C.H. claims that the supervisory defendants knowingly abdicated their duty to protect him, which, in turn, resulted in a constitutional injury. Whether C.H. ultimately will be able to establish the requisite knowledge and "blind eye" acquiescence in Frazier's alleged abuse is unknowable at this stage. However, given the flexible notice pleading standard and the detailed allegations of abuse, the knowledge and roles of the supervisory defendants, and their alleged failure to report or take corrective action, the Court

finds the complaint sufficient to merit the development of an evidentiary record to permit full consideration of all relevant facts before a final conclusion is reached.[22]

### c.    Equal Protection, Fourteenth Amendment[23]

C.H. also argues that Principal Lambert, Principal Williams, HR Assistant Superintendent Smith, and Superintendent Jackson violated his rights under the Equal Protection Clause.[24]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Generally, equal protection violations arise when the state classifies and

---

[22] For the same reasons, C.H.'s request for punitive damages against the supervisory defendants on the federal claims is not subject to dismissal. The complaint alleges that these defendants behaved with deliberate indifference to C.H.'s safety and sets forth plausible facts to support that allegation. Therefore, the complaint suffices to state a claim for punitive damages. *See, e.g.*, *Riley v. Camp*, 130 F.3d 958, 980 (11th Cir. 1997) (affirming award of punitive damages in deliberate indifference case); *H.C. by Hewett v. Jarrard*, 786 F.2d 1080 (11th Cir. 1986) (reversing district court's denial of punitive damages in § 1983 claim involving denial of medical care to juvenile inmate); *Gibson v. Moskowitz*, 523 F.3d 657 (6th Cir. 2008) (allowing recovery of $3 million in punitive damages when inmate died as result of jail psychiatrist's deliberate indifference to medical needs).

[23] The equal protection claims purport to be brought under § 1983 but, in addition to the federal Constitution, include a reference to the Florida Constitution. The alleged violations of a state constitution are not cognizable under § 1983, and thus the reference to the Florida Constitution will be stricken from Count Three (against the School Board) and Count Seven (against the individual defendants).

[24] Because the Court has already found that Investigator Farley is not a supervisory official for purposes of liability under § 1983, the equal protection claim alleged against him in a supervisory capacity must be dismissed.

treats "some discrete and identifiable group of citizens differently from other groups." *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). To state an equal protection claim, the plaintiff must therefore show that the state treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons. *See id.*; *see also Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). In addition, "proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Corey*, 682 F.3d at 1297 (citing *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995)). Importantly, for purposes of stating an equal protection claim against a supervisor pursuant to § 1983, the plaintiff must allege facts showing that the supervisory defendant acted with discriminatory intent or purpose. *See Iqbal*, 556 U.S. at 676-77; *see also C.C. ex rel. Andrews v. Monroe Cty. Bd. of Educ.*, 427 F. App'x 781, 783 (11th Cir. 2011) (citing *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010)). Specifically, this requires the plaintiff to show that the supervisory defendant undertook a discriminatory action "because of, not merely in spite of, the action's adverse effect upon an identifiable group." *See Iqbal*, 556 U.S. at 677; *see also Andrews*, 427 F. App'x at 783.

The supervisory defendants generally argue that C.H. has failed to state an equal protection claim. The Court disagrees. Here, C.H. alleges that he and other

nonverbal disabled students were intentionally treated differently than verbal, disabled students and/or non-disabled students. *See* ECF No. 55 at 71. Specifically, C.H. alleges that Frazier targeted and abused nonverbal, disabled students, "as opposed to other students who were verbal enough to report his abuse." *Id*. at 21. It is similarly alleged that the supervisory defendants concealed, failed to stop, and failed to adequately address the abuse of nonverbal, disabled students because of their profound disability and inability to speak out against the abuse.[25] *See id*. at 71. At this early stage of the proceedings, the Court finds these allegations sufficient to state an equal protection claim against Principal Lambert, Principal Williams, HR Assistant Superintendent Smith, and Superintendent Jackson. *See Williams*, 181 F. Supp. 3d at 1137-38 (finding plaintiff stated a plausible equal protection claim against school principal where he alleged that abuse of nonverbal, disabled students was concealed or ignored while other verbal, disabled and non-disabled students were "not subject to the same abusive treatment . . . and reports of their abuse were not ignored"); *see also Grindle*, 599 F.3d at 588-89 (determining that jury could reasonably infer that principal acted with intent to discriminate on the basis of gender where there was evidence that she covered up and attempted to downplay the sexual abuse of female students); *cf. Hill*, 797 F.3d at 978 (holding that a school principal

---

[25] The supervisory defendants' alleged inaction, inadequate responses to, and concealment of the abuse of C.H. and other nonverbal ESE students is detailed elsewhere in this Order.

can violate a female student's rights under Equal Protection Clause when he does nothing in response to known sexual harassment and such inaction amounts to deliberate indifference).

### 3. Qualified Immunity

All of the individual defendants argue that they are entitled to qualified immunity with respect to C.H.'s constitutional claims. A complaint is subject to dismissal under Rule 12(b)(6) where its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). "In reviewing a motion to dismiss based on qualified immunity, [a] district court is required to accept the factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff." *Epps v. Watson*, 492 F.3d 1240, 1242 n.1 (11th Cir. 2007) (quoting *Wilson v. Strong*, 156 F.3d 1131, 1133 (11th Cir 1998)).

The affirmative defense of qualified immunity shields public officials performing discretionary functions from suit in their individual capacities, unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To receive the benefit of qualified immunity, an official must first show that he was acting within his discretionary authority when the allegedly unlawful acts occurred. *See*

*Cottone*, 326 F.3d at 1357. Once this showing is made, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. *Id*. at 1358. An official is not entitled to qualified immunity where: (1) his alleged conduct violated a federal statutory or constitutional right; and (2) the right was clearly established at the time of the violation. *Id*. at 1358-59. A right is "clearly established" if "it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted." *Id*. at 1359. In other words, the state of the law must have provided the official with "fair warning that [his] alleged [conduct] was unconstitutional." *Id*.

In this case, it cannot be reasonably disputed that the acts forming the basis of C.H.'s § 1983 claims are discretionary in nature. Moreover, the Court has already found that the allegations in the complaint, taken as true, state *plausible* claims that: (1) Frazier's alleged abuse violated C.H.'s substantive due process right to be free from excessive corporal punishment and his right to equal protection of the laws; and (2) certain defendants' responses to reports of Frazier's abuse were constitutionally insufficient. Thus, for purposes of qualified immunity, the Court must now consider whether reasonable school officials would have known and understood that such conduct—actual abuse in Frazier's case, and apathy in response to reports of abuse in the case of the other individual defendants—is unconstitutional.

Regarding Frazier, the Court has little difficulty finding that a reasonable special education teacher would know that maliciously punching, kicking, slapping, starving, and confining a child—for hours at a time—to a stationary bike, cardboard box, or hot transport van interferes with that child's constitutional liberty interests. It has been clearly established for decades that this level of physically abusive conduct—arbitrary and excessively severe corporal punishment of public school children, particularly developmentally disabled students—violates the students' constitutional rights. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citing *Ingraham*, 430 U.S. at 674); *see also Kirkland*, 347 F.3d at 905; *Neal*, 229 F.3d at 1075; *Hatfield*, 534 F. App'x at 847. Accepting the allegations in the complaint as true, C.H. has pled sufficient facts to overcome qualified immunity for Frazier at this stage. Consequently, Frazier's motion to dismiss C.H.'s substantive due process claims on qualified immunity grounds is due to be denied.

The same is true for all of the remaining individual defendants. It has long been clearly established that supervisory liability under § 1983 is imposed against supervisory officials in their individual capacities for: (1) their own culpable action or inaction in response to notice of constitutional deprivations resulting from a subordinate's "history of widespread abuse"; and (2) conduct reflecting an "improper custom or policy" of deliberate indifference to the constitutional rights of others. *Broward Cty.*, 604 F.3d at 1266; *Hartley v. Parnell*, 193 F.3d 1263, 1269

(11th Cir. 1999); *see also Iqbal*, 556 U.S. at 676-77 (recognizing supervisory liability for equal protection violations). The right to be free from arbitrary and excessive corporal punishment in a school context is also clearly established under the precedent of the Supreme Court and the Eleventh Circuit, *Ingraham*, 430 U.S. at 672-74; *Neal*, 229 F.3d at 1075; *Kirkland*, 347 F.3d at 904, as is the right to be free from intentional and arbitrary disparate treatment on account of disability, *see Cleburne*, 473 U.S. at 446.

In this case, the alleged acts and omissions on the part of the individual defendants, accepted as true, plausibly establish violations of the above federal statutory and constitutional provisions. A reasonable supervisory school official would have known that Frazier's alleged multi-year history of physically abusing nonverbal ESE students, and the abject failure of supervisory school officials to address and prevent that abuse, would result in a violation of the students' constitutional rights. The question of whether C.H.'s allegations are substantiated presents "another issue for another time." *Williams*, 181 F. Supp. 3d at 1129. For now, C.H. has pled enough facts to overcome qualified immunity for the individual defendants at this stage.

### B. Individual Defendants, State Law Claims

C.H. brings claims under Florida law against only two of the individual defendants, Frazier and Hennion. Three state law claims are alleged against Frazier:

(1) a violation of the rights of a developmentally disabled person under Fla. Stat. § 393.13 (Count Thirteen); (2) negligence (Count Sixteen); and (3) battery (Count Seventeen).  There are two state law claims against Hennion:  (1) negligence (Count Sixteen); and (2) battery (Count Seventeen).   In response, Frazier and Hennion separately argue that C.H. has failed to state a claim for battery and, in any event, they are entitled to official immunity for the state law claims.

### 1.  Battery

To state a cause of action for the tort of battery under Florida law, a plaintiff must allege that the defendant intentionally inflicted harmful or offensive contact on another person.  *See Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005); *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. 2d DCA 1981).   "To establish the required intent to commit battery, the plaintiff must show that defendant exhibit[ed] a deliberate intent to injure or engage[d] in conduct which [wa]s substantially certain to result in injury."  *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (citing *D'Amario v. Ford Motor Co.*, 806 So .2d 424, 438 (Fla. 2001)).

In this case, for the same reasons that C.H. has adequately alleged an excessive corporal punishment claim against Frazier, he has also adequately pled a state law claim for battery against him.  The complaint also adequately states a plausible claim for battery against Hennion.  Accepting the factual allegations as true, which, again, the Court must do at this stage, *Erickson*, 551 U.S. at 94, Hennion inflicted harmful

and offensive contact on C.H. on numerous occasions over a two-year period by strapping him to a stationary exercise bike for hours at a time. Moreover, the allegations plausibly support a reasonable inference that Hennion's conduct was substantially certain to result in injury, given the profound nature and extent of C.H.'s disabilities.[26] For these reasons, the Court finds that C.H. has pled sufficient facts to state a claim for battery against Hennion.

## 2. Official Immunity

Frazier and Hennion both assert the defense of official immunity in response to C.H.'s state law tort claims, pursuant to Fla. Stat. § 768.28(9)(a). Under this provision, state officers, employees and agents are immune from suit in their personal capacity for discretionary actions taken within the scope of their official authority. *See id*. This statutory immunity may be pierced only where a state official either: (1) acts outside the scope of his employment; or (2) acts "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See id*. Thus, to survive a motion to dismiss on official immunity grounds, a plaintiff must provide a good faith factual basis for concluding that the state official either acted outside the scope of his employment or in bad faith. *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. 3d DCA 2007). Courts construing

---

[26] Indeed, according to the complaint, Frazier's practice of strapping ESE students to stationary exercise bikes did, in fact, result in injury on at least one occasion, when the bike tipped over and fell on top of the student. *See* ECF No. 55 at 16.

the bad faith prong of § 768.29(9)(a) use the actual malice standard, *Parker v. State Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with "ill will, hatred, spite, [or] evil intent," *Reed v. State*, 837 So. 2d 366, 368-69 (Fla. 2002).

In this case, it cannot be reasonably disputed that the alleged abusive acts forming the basis of C.H.'s state law claims against Frazier were discretionary in nature. Thus, Frazier is only entitled to statutory immunity if the complaint contains factually supported allegations of actual malice. As the Court has already found, the complaint is replete with factual allegations—including Frazier's own alleged statements, his alleged multi-year history of committing the same physically abusive acts, the alleged lack of pedagogical or disciplinary justification for his acts—which, if true, plausibly support a conclusion that Frazier acted in bad faith and with actual malice. The Court thus finds that C.H. has pled sufficient facts to overcome statutory immunity for Frazier at this stage.

Similarly, it cannot be reasonably disputed that the alleged abusive acts forming the basis for C.H.'s state law negligence and battery claims against Hennion were discretionary in nature. Further, as with Frazier, Hennion's own alleged statements—*e.g.*, verbally antagonizing ESE students, including C.H. by calling them names and making offensive comments about their parents; threatening the safety of another teacher's aide who reported Frazier's abuse—and her alleged

multi-year pattern of committing the same unjustified and physically abusive conduct, together, plausibly support an inference that Hennion acted with "ill will, hatred, spite, [or] evil intent" so as to satisfy the actual malice standard. *See id*. Therefore, the Court finds that C.H. has also pled sufficient facts to overcome Hennion's official immunity defense at this stage.

### C.    The School Board

C.H. alleges nine claims against the School Board, with each claim presenting an alternative theory of municipal liability:  civil rights violations under 42 U.S.C § 1983 based on an alleged unofficial policy or custom of allowing employees to use excessive force against and deny equal protection to C.H. and other ESE students (Counts Two and Three);[27] conspiracy to interfere with C.H.'s civil rights in violation of 42 U.S.C. §§ 1983 and 1985 (Count Four); disability discrimination under the ADA and Rehabilitation Act (Counts Eleven and Twelve); and Florida state law claims for disability discrimination; negligent hiring, training, retention, and supervision; and respondeat superior (Counts Thirteen through Fifteen).

---

[27] C.H. also alleges a substantive constitutional claim for unreasonable seizure against the School Board, in violation of the Fourth Amendment (Count One).  Because the Court has already determined that no Fourth Amendment violation occurred, this claim provides no basis for relief and will be dismissed. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that a predicate to municipal liability is the existence of an underlying constitutional violation); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (explaining that the first requirement for imposing municipal liability under § 1983 is a showing that plaintiff's constitutional rights were violated by a municipal agent).

### 1.     Constitutional Claims, § 1983

To establish liability under 42 U.S.C. § 1983, a plaintiff must assert the violation of a specific constitutional right committed by someone acting under color of state law. *Broward Cty.,* 604 F.3d at 1265.  Here, C.H. alleges that the School Board, a municipal entity, violated his rights under the Fourth Amendment (unreasonable seizure) and the Fourteenth Amendment (excessive force and equal protection).  More specifically, it is alleged that the School Board had an unofficial custom of deliberate indifference and failure to respond to abusive conduct by teachers; failed to implement or enforce policies regarding training, supervising or disciplining employees in the reporting of child abuse and to prevent the violation of constitutional rights of students; and cultivated an atmosphere of intimidation to prevent reports of child abuse or encourage instructing employees not to report constitutional violations.  In response, the School Board argues that C.H. has failed to allege facts sufficient to support a claim for municipal liability under § 1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978).  The Court disagrees.

The Supreme Court "has placed strict limitations on municipal liability under § 1983."  *Grech v. Clayton Cty., Ga*., 335 F.3d 1326, 1329 (11th Cir. 2003).  A municipal entity, like the School Board in this case, cannot be held liable under § 1983 "simply because its agent causes an injury, even a constitutional injury." *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 902 (11th Cir. 1984).  Thus, a § 1983

claim against a municipality may not be premised on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Instead, a plaintiff must identify a municipal custom or policy that caused his injuries. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). In other words, liability may only attach where the municipality's custom or policy caused municipal employees to violate the plaintiff's constitutional rights. *Id*.

A plaintiff can establish municipal liability under *Monell* in three ways: (1) identify an official policy; (2) identify an unofficial custom or practice that is "so permanent and well settled as to constitute a custom and usage with the force of law"; or (3) identify a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.[28] *See Cuesta v. Sch. Bd. of Miami-Dade Cty., Fla*., 285 F.3d 962, 966, 968 (11th Cir. 2002). Only the second theory of municipal liability is alleged in this case.[29]

Municipalities may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal

---

[28] The *Monell* standard and analysis applies to both the equal protection claim, *see Hill*, 797 F.3d at 977-78, and the substantive due process claim, *see Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442-43 (11th Cir. 1985), against the School Board.

[29] The School Board's brief only addresses the first and third bases for municipal liability; that is, it argues that liability under *Monell* only attaches to an "official policy or custom" or a "decision that is officially adopted by the municipality or created by an official of such rank that he or she can be said to be acting on behalf of the municipality." *See* ECF No. 77 at 7-8. As neither of these bases for municipal liability are alleged in this case, the School Board's argument against municipal liability wholly misses the mark.

approval through the [municipality's] official decisionmaking channels." *Monell*, 436 U.S. at 690-91. Custom consists of "persistent and widespread . . . practices" or "deeply embedded traditional ways of carrying out . . . policy" that, although unwritten, are "so permanent and well settled as to [have] . . . the force of law." *See id.* at 691 & n.56. In cases alleging municipal "inaction," a custom arises where a municipality fails to correct "the constitutionally offensive actions of its employees" and instead "tacitly authorizes" or "displays deliberate indifference towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Importantly, the municipality must have actual or constructive knowledge of the widespread unconstitutional practice to form a custom of indifference, and "random acts or isolated incidents are insufficient." *See Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). To plausibly state a § 1983 claim against the School Board based on deliberate indifference to widespread abuse, C.H. must sufficiently allege: (1) the existence of a widespread and a persistent pattern of abuse by the teachers; (2) that the School Board had actual or constructive knowledge of the abuse; (3) that the School Board tacitly approved or deliberately ignored the abuse, such that their inaction became a custom; and (4) that the School Board's custom of inaction through deliberate indifference was a "moving force" behind the constitutional violations. *Williams*, 181 F. Supp. 3d at 1121.

In addition to the allegations of a custom of inaction in responding to reports of child abuse, the complaint asserts that the School Board is liable for its failure to train and supervise employees regarding student abuse. The School Board's liability under § 1983 for a failure to train and supervise is similarly limited to circumstances where the failure to train or supervise amounts to deliberate indifference and is based on an official policy or custom. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To state such a claim, C.H. must sufficiently allege that: (1) the employees were inadequately trained and supervised regarding student abuse; (2) this failure to adequately train or supervise is the policy or custom of the government entity; and (3) the policy caused the employees to violate a citizen's constitutional rights. *Id*. at 389-91; *See also Gold*, 151 F.3d at 1350. Because "a municipality will rarely have an express written or oral policy of inadequately training or supervising its employees," a policy or custom may be shown where the failure to train or supervise evidenced "deliberate indifference" to constitutional rights in the face of a "history of widespread prior abuse" or a pattern of prior similar incidents put the municipality on notice of a need to train. *Gold*, 151 F.3d 1350-51 (quoting *City of Canton*, 489 U.S. at 388-89 and *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990)).

Without repeating the analysis already detailed above, the Court finds simply that the first three elements necessary to state a claim of deliberate indifference to widespread abuse are satisfied based on: (1) Frazier's open and continuous physical

abuse of ESE students at Silver Sands over a two-year period; (2) constructive knowledge to the School Board based on Superintendent Jackson's knowledge of that abuse;[30] and (3) Jackson's indifference and inaction, which is properly imputed to the School Board by virtue of her position and similarly shows a plausible custom of inaction and concealment in responding to complaints of abuse by ESE teachers, which allowed the abuse to continue. The same factual allegations also support an inference that on receiving notice of Frazier's ongoing abuse and, later, Stillions' ongoing abuse, there was an obvious need for adequate training and supervision on the staff's legal obligation to report child abuse. Instead of correcting the inadequacies through new procedures to ensure adequate training and supervision, the abusive teachers were left in the classrooms, aides were encouraged not to report abuse, and the abuse was covered up.

Lastly, the Court finds that C.H. has plausibly alleged that the School Board's custom, and its failure to adequately supervise and train employees, was a "moving force" behind the violations of C.H.'s substantive due process and equal protection

---

[30] Because the Superintendent is the executive officer of the School Board, she is a high enough official that notice to her constitutes notice to the School Board. *See* Fla. Stat. § 1001.33 (describing the superintendent as the executive officer of the school board); *Williams*, 181 F. Supp. 3d at 1123 (denying a school district's motion to dismiss § 1983 claim against it and stating that the superintendent's knowledge of student abuse was "sufficient at the motion to dismiss stage, because an allegation that a superintendent, board member, or other senior official had knowledge of the alleged misconduct is enough to infer that the district itself had notice."). It is also worth noting, however, that other high-ranking school administration officials—including HR Assistant Superintendent Smith and the two principals—received notice much earlier.

rights. As detailed above, the allegations in this case include many more than one or two isolated prior incidents of abuse. Superintendent Jackson was on notice of multiple instances of abuse by Frazier, which were substantiated by February or March of 2016, and took no action to implement District-wide or even just Silver Sands-specific corrective policies, supervision, training, or procedures for reporting abuse. She then received notice of Stillions' similar pattern of abusing ESE students but, again, no action was taken, at least not for several months. As a result, Principal Williams continued failing to adequately supervise Frazier; classroom aides continued being discouraged from reporting abuse or told to report only to the principal for the purpose of concealing the conduct; and C.H. was left in the classroom to continue enduring Frazier's abuse. These allegations support an inference that the School Board's custom of inaction, and its failure to adequately supervise and train employees, were a moving force behind the continued abuse of C.H. and, as a result, caused the underlying constitutional violations. *See Williams*, 181 F. Supp. 3d at 1124 (where complaints of a multi-year pattern of abuse were met with a school district's custom of inaction, the allegations were sufficient to suggest the custom was a moving force behind the later continued abuse).

## 2.     ADA & Rehabilitation Act[31]

C.H. also brings discrimination claims against the School Board pursuant to

Title II of the ADA, 42 U.S.C. § 12131, *et seq*., and Section 504 of the Rehabilitation

Act, 29 U.S.C. § 794 ("§ 504").[32]   The School Board argues that these claims should

be dismissed for failure to exhaust administrative remedies under the Individual with

Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.  The Court disagrees.

The IDEA offers federal funds to states in exchange for a commitment to

furnish a "free appropriate public education" ("FAPE")[33] to all children with certain

physical or intellectual disabilities.  *See* 20 U.S.C. § 1412(a)(1)(A).  The ADA and

§ 504, on the other hand, "forbid discrimination on the basis of disability in the

provision of public services."[34]  *See J.S., III by & through J.S. Jr. v. Houston Cty.*

*Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017).  The IDEA does not "restrict or

---

[31] Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together.  *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

[32] As an initial matter, the Court strikes C.H.'s request for punitive damages in Counts Eleven and Twelve. *See Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002) (holding that punitive damages may not be awarded in private suits brought under the ADA and the Rehabilitation Act).

[33] A FAPE is comprised of "special education and related services," to include "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. *See* 20 U.S.C. §§ 1401(9), (26), (29).

[34] The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, while § 504 provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794.

limit the rights [or] remedies" provided to disabled children by the ADA or § 504. 20 U.S.C. § 1415(l). However, an action brought under the ADA or § 504 is subject to the IDEA's exhaustion requirements if it "seek[s] relief that is also available under" the IDEA. *Id.* Specifically, an action seeks relief under the IDEA, and exhaustion is therefore required, when the gravamen of the action seeks relief for the denial of a FAPE. *See Fry v. Napoleon Cmty. Sch.,* 137 S. Ct. 743, 748 (2017). To determine whether a claim seeks relief under the IDEA, the Supreme Court has instructed courts to ask a pair of hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? Second, could an adult at the school have pressed essentially the same grievance?" *Id.* at 756. If the answer to these questions is no, then the complaint likely concerns a FAPE violation under the IDEA. *Id.*

The Supreme Court has specifically noted that a claim involving physical abuse of a disabled student by a teacher, acting out of animus or frustration, "is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion." *Id.* at 756 n.9. The gravamen of C.H.'s claims concerns alleged discriminatory and malicious physical abuse of C.H., and other nonverbal, disabled students, not the appropriateness of an educational program.[35] *See id.* (the fact that

---

[35] C.H.'s references to his individualized education program ("IEP"), functional behavior assessment ("FBA"), and behavior intervention plan ("BIP") in his general factual allegations are for context only. The gravamen of his action concerns intentional discrimination and child abuse.

"a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official . . . . indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program."); *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.,* 244 F. Supp. 3d 904, 922–23 (N.D. Iowa 2017) (finding that IDEA exhaustion was not required when the plaintiff's claims concerned excessive and unreasonable use of force and discrimination, stemming from the physical abuse of a disabled child, as "the *wrongs* and the *remedies* [were] both beyond the scope of the denial of a FAPE."); *see also P.G. by & through R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 902–06 (M.D. Tenn. 2018) (finding that ADA and § 504 claims concerning physical abuse of a disabled student were not subject to the IDEA's exhaustion requirements).

---

See *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 921 (N.D. Iowa 2017) ("[T]he "gravamen" of the wrongfulness of [the defendant's] conduct in the Complaint's general factual allegations is not that it violated the IDEA, but that it involved unlawful and unreasonable use of physical force against [the plaintiff]. The allegation that the use of force was contrary to the IEP and BIP is made as an indication of the *unreasonableness* of the use of force, not as the *gravamen* of the wrongfulness of the conduct.") (emphasis in original); *see also Fry*, 137 S. Ct. at 755 (courts should examine the substance, not surface of an action when assessing whether it seeks relief under the IDEA); *Lawton v. Success Acad. Charter Sch., Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018) ("[W]hile plaintiffs' allegations occasionally touch on denial of a FAPE and failure to reasonably accommodate the students, the vast majority of the allegations, and thus the gravamen of the complaint, concern intentional discrimination and retaliation.").

Therefore, C.H.'s ADA and § 504 claims will not be dismissed for failure to exhaust administrative remedies.[36]

### 3.    State Law Claims

C.H. also brings the following claims against the School Board under Florida law:  (1) negligent hiring, training, retention and/or supervision (Count Fourteen); and (2) respondeat superior (Count Fifteen).[37]  In response, the School Board argues that C.H. has failed to state a claim for negligent hiring or retention, and that

---

[36] Alternatively, the School Board generally argues that C.H. has failed to state a claim because it "is unaware of any Eleventh Circuit case that has recognized the existence of [hostile educational environment] claims under the ADA or Section 504."  ECF No. 20 at 20.  However, the School Board has not cited any binding authority rejecting or declining to recognize a hostile educational environment theory in this context, and, in any event, it is not clear if C.H. is proceeding solely under this theory.  In light of the foregoing and the fact that multiple courts have allowed ADA and § 504 claims premised on similar allegations of discrimination and abuse to go forward, the Court denies the School Board's motion to dismiss on this basis. *See, e.g., Williams*, 181 F. Supp. 3d at 1139, 1139 n.30 (denying motion to dismiss ADA and § 504 claims against school district in light of the alleged physical and verbal abuse of a disabled student by an instructor); *K.G.*, 244 F. Supp. 3d at 928–29 (denying summary judgment as to the plaintiff's ADA and § 504 claims premised on subjecting a disabled student, who was physically abused by teacher, to a hostile educational environment); *K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970 (N.D. Cal. 2016) (finding that a disabled student stated claims under the ADA and § 504 against the school district when she was allegedly abused and the perpetrator of the alleged abuse was deliberately indifferent to her rights); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343 (S.D.N.Y. 2005) (finding that a "school district's deliberate indifference to pervasive, severe disability-based harassment that effectively deprive[s] a disabled student of access to the school's resources" is actionable under the ADA); *cf. J.S.*, 877 F.3d at 992 (affirming summary dismissal of ADA and § 504 claims premised on verbal and physical abuse of a disabled student because there were insufficient facts in the record to establish that the defendants were on notice of and deliberately indifferent to the abuse).

[37] Initially, C.H. also alleged a claim for violation of the rights of a developmentally disabled person under Fla. Stat. § 393.13 (Count Thirteen), as well as claims for punitive damages and prejudgment interest.  However, he now wishes to dismiss and/or strike these claims.  *See* Pl. Response Brief, ECF No. 83 at 2.  That request is **GRANTED**.

sovereign immunity applies to the *respondeat superior* and negligent training claims.

### a. Negligent Hiring

The School Board argues that C.H. has failed to state a claim that it was negligent in hiring Frazier and Hennion. To state a claim for negligent hiring under Florida law, a plaintiff must allege facts showing that:

> "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known."

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002). Importantly, in this context, the "core predicate for imposing liability is one of reasonable foreseeability." *Id*. In other words, "the inquiry is focused on whether the specific danger that ultimately manifested itself . . . reasonably could have been foreseen at the time of hiring." *Id*. at 363.

In this case, the Court finds C.H.'s allegations insufficient to state a negligent hiring claim. The complaint does not allege any facts that would plausibly suggest the School Board was on notice of, or reasonably could have foreseen, any harmful propensities or unfitness for employment in Frazier or Hennion. *See Duquesne v. City of Miami Beach*, No. 1:12cv20573, 2012 WL 3061603, at *10 (S.D. Fla. July 26, 2012) (dismissing negligent hiring claim based on lack of allegations about "any

incidents from the [employee's] history before being hired"). Nor are there any factual allegations that would support a claim that Frazier and Hennion were not competent and qualified to teach ESE students when they were hired. *See Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249-50 (S.D. Fla. 2014) (dismissing negligent hiring claim where complaint lacked factual allegations (1) that the employer "knew or should have known of the unfitness or harmful propensities of its medical staff members"; and (2) as to "why the medical staff was not competent or duly qualified" before being hired). The facts pled are thus insufficient to "state a claim to relief that is plausible on its face." *See Iqbal*, 129 S. Ct. at 1949.

### b. Negligent Retention

The School Board also argues C.H. has failed to state a claim for negligent retention. In contrast to negligent hiring, "[n]egligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Fernandez v. Bal Harbour Vill.*, 49 F. Supp. 3d 1144, 1153 (S.D. Fla. 2014). "The factors constituting notice, employee fitness, . . . the type of action reasonably required of the employer[,]" and "the negligence of an employer's acts or omissions" are questions of fact that will "vary with the circumstances of each case." *Garcia v. Duffy*, 492 So. 2d 435, 442 (Fla. 2d DCA 1986). To survive a motion to dismiss, a

plaintiff must plead sufficient facts to establish that the employer owed and breached a duty to the injured person, which caused the injury. *See id.* at 439; *see also Roberson v. Duval Cty. Sch. Bd.*, 618 So. 2d 360, 362 (1st DCA 1993).

Applying these principles, the Court finds that C.H. has adequately alleged a claim against the School Board for negligent retention of Frazier and Hennion. To begin with, it is beyond dispute that the School Board had a "common law duty to protect [students] from the result of negligent hiring, supervision, or retention" of employees "whose negligent or intentional acts . . . [could] foreseeably cause injuries to students." *See Sch. Bd. of Orange Cty. v. Coffey*, 524 So. 2d 1052, 1053 (Fla. 5th DCA 1988) (school board had duty to protect student from negligent supervision and retention of school teacher who sexually abused student); *see also Wyke v. Polk Cty. Sch. Bd.*, 129 F.3d 560, 571 (11th Cir. 1997) (citing *Rupp v. Bryant*, 417 So. 2d 658, 666 (Fla. 1982)) ("Florida schools have a duty to supervise students placed within their care."). C.H. alleges that the School Board breached that duty when it received numerous reports that Frazier and Hennion were physically abusing ESE students, confirmed the accuracy of those abuse reports with an internal investigation, and then chose not to meaningfully discipline Frazier or otherwise stop the abuse. Instead, it is alleged that the School Board knowingly left Frazier in the same ESE classroom, where he continued the same physical abuse of students, including C.H., for months thereafter. According to the complaint, C.H. suffered

physical and psychological injuries as a proximate result. This is sufficient to state a plausible claim for negligent retention.

### c. Sovereign Immunity

The School Board asserts that sovereign immunity bars C.H.'s common law claims for negligent training and *respondeat superior*.[38] Under Florida law, agencies and subdivisions of the state are generally immune from tort liability, except to the extent that immunity is expressly waived "by legislative enactment or constitutional amendment." *See Ingraham v. Dade Cty. Sch. Bd.*, 450 So. 2d 847, 848 (Fla. 1984) (citing Fla. Const., art. X, § 13 and Fla. Stat. § 768.28). In this case, then, the applicability of sovereign immunity turns on whether the State of Florida has waived that immunity for the negligent training and *respondeat superior* claims alleged by C.H.

### i. Negligent Training

In the context of a negligence claim, Florida courts have held that sovereign immunity extends to "discretionary" governmental functions, but not to acts that are "operational in nature." *See Kaisner v. Kolb*, 543 So. 2d 732, 736 (Fla. 1989). A "discretionary function" is one in which "the governmental act in question involved

---

[38] Although the School Board does not argue otherwise, the Court notes that the negligent "retention and supervision of a teacher by a school board are not acts covered with sovereign immunity" under Florida law. *See Sch. Bd. of Orange Cty. v. Coffey*, 524 So. 2d 1052, 1053 (Fla. 5th DCA 1988); *see also Brantly v. Dade Cty. Sch. Bd.*, 493 So. 2d 471, 472 (Fla. 3d DCA 1986).

an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1117-18 (11th Cir. 2005) (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). In contrast, an operational function is one not inherent in policy or planning but merely reflects a secondary decision as to how those policies or plans will be implemented. *See id*. at 1118. Distinguishing between the boundary of discretionary policy-making and operational choices generally is a highly fact-dependent exercise. *See Commercial Carrier Corp. v. Indian River Cty.*, 371 So. 2d 1010, 1020 (Fla. 1979) (laying out four-part factual test).

In this case, C.H. alleges that the School Board was negligent by failing to "adequately and appropriately train [its] employees in identifying, documenting, and/or reporting child abuse," *see* ECF No. 55 at 92, which includes the School Board's alleged failure to properly implement and enforce its training on state-mandated reporting obligations, *see* Pl. Response Brief, ECF No. 83 at 19-20. C.H. maintains that these were operational choices to which sovereign immunity does not apply. The Court agrees, in part.

Claims for negligent training are typically barred by sovereign immunity because a "decision regarding how to train . . . [employees] and what subject matter to include in the training is clearly an exercise of governmental discretion regarding

fundamental questions of policy and planning." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001); *see also Cook*, 402 F.3d at 1118. Nevertheless, negligent training claims premised on "the implementation or operation of [a] training program, as opposed to the program's content, may involve operational functions," depending on the facts of the case. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

Applying these principles here, to the extent C.H.'s negligent training claim challenges the content of the School Board's training policies and procedures, it is directed at a discretionary governmental function and, therefore, barred by sovereign immunity. To the extent C.H. is challenging the School Board's alleged operational negligence in the implementation of its training policies and procedures, he has stated a plausible claim for relief. The Court finds that the complaint appears to be directed at the alleged failure to implement or conduct training. However, the Court emphasizes the preliminary nature of this finding. After the parties have developed a factual record during discovery, the Court will be better positioned to evaluate whether sovereign immunity applies to C.H.'s negligent training claim. For now, C.H. has carried his initial burden of alleging facts sufficient to support a cause of action.

## ii.    *Respondeat Superior*

C.H. alternatively claims that the School Board is vicariously liable for the allegedly negligent actions of its employees, Frazier and Hennion, under a theory of *respondeat superior*.   Under Florida's doctrine of *respondent superior*, a local government is liable in tort for the actions or omissions of an employee committed within the scope of his or her employment, but it is shielded from liability if the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."   Fla. Stat. § 768.28(9)(a).[39]  A local government may even be held liable for an intentional tort, such as excessive force or battery, "as long as the employee was acting in the course and scope of his employment" and not with "bad faith, malicious purpose, or wanton and willful disregard of the plaintiff's rights."  *Gregory v. Miami-Dade Cty., Fla.*, 719 F. App'x 859, 873 (11th Cir. 2017) (quoting *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 611 (Fla. 4th DCA 2013)).

The School Board argues that the *respondeat superior* claim should be dismissed because under the facts pled, Frazier and Hennion's conduct can only be

---

[39] In addition, the statute provides that the "exclusive remedy" for an act or omission of a local government employee is an action against the governmental entity, "unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a); *id*. § 768.28(2) (for purposes of this section, the terms "state agencies and subdivisions" include counties and municipalities).

viewed as bad faith, malicious, and in wanton disregard of human rights, precluding liability for the School Board. C.H. responds that federal notice pleading requirements permit him to plead in the alternative.

Federal Rule of Civil Procedure 8(d) "expressly permits the pleading of both alternative and inconsistent claims." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009); *see also Brookhaven Landscape & Grading Co. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency."). In this context, however, if the facts alleged "can occur only from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails" on sovereign immunity grounds. *Gregory*, 719 F. App'x at 873.

While it is difficult to conceive of any portion of Frazier and Hennion's conduct as negligent on the facts alleged, cases illustrate that a "disciplinary tactic" that amounts to intentional battery may not always rise to the level of being malicious or wanton. *Compare Carestio v. Sch. Bd. of Broward Cty.*, 866 So. 2d 754 (Fla. 4th DCA 2004) (allowing jury to decide whether school employees who kicked and punched a student for disruptive behavior were within the scope of employment or acting in a willful and wanton manner) *with Gregory*, 719 F. App'x at 873 (dismissing where a 16-year-old was shot six times in the back, finding the conduct "much more reprehensible and unacceptable than mere intentional

conduct"). Therefore, the Court agrees with C.H. that, at this stage, notice pleading allows the *respondeat superior* claim to go forward.

## IV. Conspiracy

C.H. also alleges claims of "conspiracy to interfere with [his] civil rights" under 42 U.S.C. §§ 1983 and 1985(3) against the School Board and six of the individual defendants—Superintendent Jackson, HR Assistant Superintendent Smith, Investigator Farley, Principal Lambert, Principal Williams, and the teacher's assistant, Jean Hennion.[40] In response, the defendants variously argue that: (1) C.H. has failed to provide any non-conclusory factual allegations that they reached an unlawful agreement to violate his rights; and (2) the intracorporate conspiracy doctrine bars these claims.

### i. Failure to State a Claim

To state a claim for civil conspiracy under § 1983, a plaintiff must allege: (1) a violation of his federal rights under color of state law; (2) an "understanding" among the defendants to violate those rights; and (3) a resultant "actionable" harm." *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (stating that there must be a

---

[40] The complaint also claims, rather off-handedly, that the School Board conspired with the Okaloosa Sheriff's Office to violate C.H.'s constitutional rights. No factual allegation is provided in support of that claim. Moreover, C.H.'s opposition brief on this issue does not even mention the Sheriff's Office. Therefore, the Court finds C.H. has failed to plausible establish that the Sheriff's Office was involved in the alleged conspiracy.

causal connection been the conspiracy and the constitutional harm). In contrast, a claim for conspiracy to interfere with civil rights under § 1985(3) requires factual allegations showing: (1) the existence of a conspiracy; (2) for the purpose of depriving a person or class of persons of equal protection under the law; (3) an act in furtherance of the conspiracy; and (4) a resultant injury or deprivation of a constitutional right. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). The primary difference between a § 1985(3) conspiracy claim and its § 1983 counterpart, as relevant to this case at least, is that the second element of a § 1985(3) claim requires proof that a conspirator's action was motivated by a "class-based, invidiously discriminatory animus"; whereas, there is no such requirement under § 1983.[41] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)

"The linchpin of [any] conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). Conclusory allegations of an agreement, without any factual basis to make the allegations plausible, are insufficient to state a conspiracy claim. *Williams*, 181 F. Supp. 3d at 1148. However, an agreement may be inferred "from the relationship of the parties, their overt acts and concert of action, and the totality

---

[41] Additionally, § 1983 requires that a defendant have acted under color of state law, while § 1985(3) does not. *See Griffin*, 403 U.S. at 99.

of their conduct." *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1192 (11th Cir. 2011).

Applying these principles, the Court finds that C.H. has stated plausible §§ 1983 and 1985(3) claims for conspiracy against Principal Williams, Investigator Farley, HR Assistant Superintendent Smith, Superintendent Jackson, and the School Board.[42]  To begin with, the actionable harm here is the alleged physical abuse that C.H. suffered at the hands of Frazier.  The Court has already found  that C.H. has stated a plausible claim that this harm resulted, at least in part, from the defendants' alleged violations of his substantive due process and equal protection rights under the Fourteenth Amendment.  Thus, the remaining questions for purposes of the conspiracy claims are whether C.H. has adequately alleged:  (1) the existence of an agreement or "understanding" among these defendants to violate his rights; and (2) discriminatory animus under § 1985(3).  The Court finds that he has.

The factual allegations, if true, plausibly show that the defendants knew of and communicated with each other about Frazier's reported physical abuse of ESE students, confirmed the accuracy of the abuse reports, and then all chose not to meaningfully intervene or stop the abuse, inform the parents of Frazier's students that their children were being abused, or fulfill their state-mandated reporting

---

[42] Again, Superintendent Jackson is the executive officer of the School Board and statutorily empowered to act on its behalf.  *See* supra n.4.

obligations, which, again, is a felony under Florida law. *See* Fla. Stat. § 39.205(1).

At least one defendant—Principal Williams—is specifically alleged to have engaged

in intimidation and retaliation against Silver Sands employees who reported abuse,

*see id*. at 32, while two others—Superintendent Jackson and HR Assistant

Superintendent Smith—allegedly misrepresented the nature and extent of Frazier's

misconduct in his disciplinary record, *see id*. at 31. Investigator Farley, for his part,

allegedly "made Kenwood employees agree" not to discuss the Stillions's

investigation or their knowledge of her abuse, in an effort to conceal the abuse of

ESE children throughout the School District. Taken together, these allegations,

which plausibly reflect concerted action by members of a public school

administration to conceal the abuse of ESE students and affirmative steps to prevent

the public disclosure of the abuse, despite potential criminal liability, support a

reasonable inference that the defendants conspired to conceal the abuse. The Court

thus finds that C.H. has plausibly alleged a § 1983 conspiracy claim against Principal

Williams, Investigator Farley, HR Assistant Superintendent Smith, Superintendent

Jackson, and the School Board.

The same is true with respect to the § 1985(3) conspiracy claim. The above-

described allegations plausibly establish the existence of a conspiracy among the

five defendants, various acts that were taken in furtherance of the conspiracy, and a

resultant deprivation of C.H.'s substantive due process right not to be subjected to

excessive corporal punishment at the hands of a public school teacher and his right to equal protection of the law. C.H. does not specifically allege in the § 1985(3) count that these defendants were motivated by a class-based animus, but it is evident from his other allegations and his substantive equal protection claim that he is asserting C.H.'s disability as the motivating factor. Accordingly, the Court finds C.H. has pled sufficient facts to support a conspiracy claim under § 1985(3) against Principal Williams, Investigator Farley, HR Assistant Superintendent Smith, Superintendent Jackson, and the School Board.[43]

As to Principal Lambert and Hennion, however, C.H.'s conspiracy claims are due to be dismissed because, with respect to both, the complaint fails to allege any non-conclusory facts that would allow the Court to infer that they "agreed" to join the conspiracy to conceal and cover up Frazier's abuse. Hennion is the most obviously deficient—as a mere teacher's aide in Frazier's classroom, she was not a member of school administration and there is no factual basis from which to infer that she ever communicated or met with, must less had any sort of personal or professional relationship with, any of the other alleged conspirators. C.H.'s blanket

---

[43] The Eleventh Circuit has explicitly held that "public officials cannot raise a qualified immunity defense to a [§] 1985(3) claim." *See Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 794 (11th Cir. 1992). Therefore, none of the individual defendants are entitled to qualified immunity on C.H.'s § 1985(3) claim. And, taking C.H.'s allegations as true, the defendants are not entitled to qualified immunity on the § 1983 conspiracy claim for the same reasons qualified immunity was denied on the supervisory liability claims—a reasonable school official would have known that the actions alleged violated C.H.'s clearly established rights.

assertions that all "[d]efendants reached a mutual understanding" and "conspired with each other" are too conclusory to plausibly establish that Hennion, specifically, agreed to join the conspiracy. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (explaining that "conclusory, vague and general" allegations of a conspiracy are insufficient to withstand a motion to dismiss).

The conspiracy claims against Principal Lambert are similarly deficient. There is not one factual allegation suggesting that Principal Lambert communicated with any of the other alleged conspirators about physical abuse by teachers at Silver Sands. To the contrary, C.H. explicitly alleges that Principal Lambert strived to prevent disclosure of such information to other school administration officials before his retirement. Based on the complaint, the Court can only conclude that Principal Lambert was successful in that endeavor because the other alleged conspirators—Superintendent Jackson, HR Assistant Superintendent Smith, and Principal Williams—are alleged to have learned of Frazier's abuse for the first time almost two months after Principal Lambert retired. Without any particularized factual allegation showing that Principal Lambert was in contact with the other conspirators before his retirement (or, possibly even after it), he cannot reasonably be said to have reached an agreement with them about the alleged constitutional violations in this case. *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (holding that a plaintiff could not plausibly allege that defendants "reached an understanding" to

violate her rights "without [facts] showing contacts between [them]"); *Elliott v. Wilcox*, No. 3:13cv580, 2015 WL 13273319, at *24 (M.D. Fla. Feb. 13, 2015) (stating that a conspiracy claim may not be premised on "conjecture, surmise, and guesswork). To be sure, Principal Lambert may be supervisorily liable for substantive due process and equal protection violations resulting from his own alleged deliberate indifference and failure to stop or prevent Frazier's alleged physical abuse of ESE students. However, C.H. has failed to plead sufficient facts to support civil conspiracy claims against him; therefore, those claims are due to be dismissed.

### ii. Intracorporate Conspiracy Doctrine

The defendants also argue that C.H.'s civil conspiracy claims are barred by the intracorporate conspiracy doctrine. At this stage, the Court disagrees. It is true that under the intracorporate conspiracy doctrine, a legal entity—such as the School District or the School Board in this case—"cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves," *see McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *see also Denney*, 247 F.3d at 1190,[44] but the doctrine is not without exception. One exception allows proof of a conspiracy "in the rare instance" where

---

[44] This is because the actions of "corporate agents are attributed to the corporation, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *See McAndrew*, 206 F.3d at 1036.

corporate employees are shown to have acted for their own personal purposes rather than those of their employer. *See H & B Equip. Co., Inc. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978).[45]  In other words, the doctrine does not bar conspiracy claims where the employees had an "independent personal stake in achieving the object of the conspiracy." *Id*.  Several district courts—including two in the Eleventh Circuit—have allowed conspiracy claims involving concealment of school abuse to proceed based on the "independent personal stake exception" where the facts alleged supported a plausible inference that school officials may have covered up reports of abuse in order to protect their own careers. *See, e.g.*, *Williams*, 181 F. Supp. 3d at 1146-48; *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 979-81 (C.D. Ill. 2010); *Jordan v. Randolph Cty. Sch.*, No. 4:08cv131, 2009 WL 1410082, at *7 (M.D. Ga. May 19, 2009).  Defendants have not identified, and the Court has not found, any school abuse cases finding to the contrary.  On consideration, the Court agrees with the district courts that have found it premature to dismiss a conspiracy claim at the pleadings stage based on the intracorporate conspiracy doctrine where, as here, the complaint pleads facts supporting a plausible inference that school officials actively concealed a teacher's physical abuse of students in furtherance of a conspiracy and in the interest of protecting their

---

[45] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1991) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

reputations and careers. *See id.* Significantly, the individual defendants failure to report the abuse subjected them to personal criminal liability, which injects another potential personal stake into the allegations.[46]

## V.    Conclusion

Accordingly:

A.    Roy Frazier's motion to dismiss, ECF No. 74, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

      1.    The motion is **GRANTED** with respect to Count Nine (unreasonable seizure), which is **DISMISSED** in its entirety.

      2.    The motion is **DENIED** with respect to Count Ten (substantive due process), Count Thirteen (disability discrimination under Fla. Stat. § 393.13), Count Sixteen (negligence) and Count Seventeen (battery), which remain pending against Frazier.

B.    Jean Hennion's motion to dismiss, ECF No. 52, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

      1.    The motion is **GRANTED** with respect to Count Eight (civil conspiracy), which is **DISMISSED** as against Hennion.

      2.    The motion is **DENIED** with respect to Count Sixteen (negligence) and Count Seventeen (battery), which remain pending against Hennion.

C.    Alan Lambert's motion to dismiss, ECF No. 82, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

---

[46] The Court again emphasizes the preliminary nature of this finding. To survive summary judgment, C.H. must show the individual defendants' personal interests were "wholly separable from" the interests of the School Board. *See Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 239 (W.D. Va. 1988).

1. The motion is **GRANTED** with respect to Count Five (unreasonable seizure), which is **DISMISSED** in its entirety, and Count Eight (civil conspiracy), which is **DISMISSED** as against Lambert.

2. The motion is **DENIED** with respect to Count Six (substantive due process) and Count Seven (equal protection), as well as the punitive damages claims, which remain pending against Lambert.

D. Jon Williams' motion to dismiss, ECF No. 46, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The motion is **GRANTED** with respect to Count Five (unreasonable seizure), which is **DISMISSED** in its entirety.

2. The motion is **DENIED** with respect to Count Six (substantive due process), Count Seven (equal protection) and Count Eight (civil conspiracy), which remain pending against Williams.

E. Arden Farley's motion to dismiss, ECF No. 43, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The motion is **GRANTED** with respect to Count Five (unreasonable seizure), Count Six (substantive due process) and Count Seven (equal protection), which are dismissed as against Farley.

2. The motion is **DENIED** with respect to Count Eight (civil conspiracy), which remains pending against Farley.

F. Stacie Smith's motion to dismiss, ECF No. 26, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The motion is **GRANTED** with respect to Count Five (unreasonable seizure), which is **DISMISSED** in its entirety.

2.  The motion is **GRANTED** with respect to the reference to the Florida Constitution in Count Seven (equal protection), which is **STRICKEN** as to all defendants.

3.  The motion is **DENIED** with respect to Count Six (substantive due process), Count Seven (equal protection) and Count Eight (civil conspiracy), which remain pending against Smith.

G.  Mary Beth Jackson's motion to dismiss, ECF No. 71, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  The motion is **GRANTED** with respect to Count Five (unreasonable seizure), which is **DISMISSED** in its entirety.

2.  The motion is **DENIED** with respect to Count Six (substantive due process), Count Seven (equal protection) and Count Eight (civil conspiracy), as well as the punitive damages claims, which remain pending against Jackson.

H.  The Okaloosa County School Board's motion to dismiss, ECF No. 77, is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  The motion is **GRANTED** with respect to:

    a.  Count One (unreasonable seizure) and Count Thirteen (Fla. Stat. § 393.13), which are **DISMISSED** in their entirety.

    b.  The negligent hiring claim alleged in Count Fourteen, which is **DISMISSED**.

    c.  The punitive damages claims against the School Board in Counts One through Four and Eleven through Fifteen, as well as the state law claims for prejudgment interest alleged in Counts Thirteen through Fifteen, and the reference to the Florida Constitution in Count Three, all of which are **STRICKEN**.

2.   The motion is **DENIED** with respect to Count Two (substantive due process), Count Three (equal protection), Count Four (civil conspiracy), Count Eleven (ADA), Count Twelve (Rehabilitation Act) and Count Fifteen (*respondeat superior*), as well as the negligent training, retention, and supervision claims alleged in Count Fourteen, which remain pending against the School Board.

I.   The previously imposed stay of discovery, ECF No. 54, is hereby **LIFTED**.

J.   By separate order, the Court will schedule a status conference to discuss the progression of this litigation going forward.

**DONE and ORDERED**, on this 30th day of September, 2019.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**